Oral argument not yet scheduled

_____

No. 22-1562

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Phillip Turner,

Plaintiff-Appellant

v.

Michigan Department of Corrections, et al.,

Defendants-Appellees

_____

Appeal from the United States District Court
for the Western District of Michigan, Southern Division
Case No. 1:21-cv-790

_____

OPENING BRIEF FOR PLAINTIFF-APPELLANT
PHILLIP TURNER

_____

Samuel Weiss                    Samantha Bellina
RIGHTS BEHIND BARS              Stephanie Pettit
416 Florida Ave., NW            Elisabeth Mayer
#26152                               Student Counsel
Washington, D.C. 20001          BROOKLYN LAW DISABILITY AND
                                CIVIL RIGHTS CLINIC
                                250 Joralemon Street
                                Brooklyn, NY 11201

November 10, 2022

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit:                                    Case Name: Turner v. Michigan
Case Number: 22-1562                              Department of Corrections, et al


Name of Counsel: Samuel Weiss, esq.

Pursuant to 6th Cir. R. 26.1
Makes the following disclosure: Phillip Turner

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes,
   list below the identity of the parent corporation or affiliate and the relationship
   between it and the named party: No.
2. Is there a publicly owned corporation, not a party to the appeal, that has a
   financial interest in the outcome? If yes, list the identity of such corporation
   and the nature of the financial interest: No.

## TABLE OF CONTENTS

I. THE DISTRICT COURT INCORRECTLY CONCLUDED THAT MR. TURNER HAD NOT PLED FACTS SUFFICIENT TO MAKE A CLAIM THAT HE HAD A DISABILITY……………………………….10

A. Mr. Turner Sufficiently Pled The Prima Facie Elements Necessary To Succeed In An ADA Claim……………………………………………………11

    1. Under The Correct ADA Standard, Mr. Turner Is A "Qualified Person With A Disability"…………………………………………...11

        i.   *Mr. Turner has an impairment that substantially limits his ability to walk and climb*……………………………….…12

        ii.  *Mr. Turner adequately pled that he had a disability based on a record of his impairment*…………..…………………15

        iii.  *Mr. Turner was qualified to receive the services provided by Muskegon Correctional Facility; a public entity covered by the ADA*…………………………………17

*B. Mr. Turner Demonstrated That He Was Denied Reasonable Accommodations By MDOC*………………………………………………19

    *1. Mr. Turner Pled Sufficient Facts Alleging That MCF Failed To Modify Its Policy And Provide "Meaningful Access" To Its Services, Programs, And Activities* …………………………………………19

    *2. Mr. Turner Adequately Pled That He Was Discriminated Against By Reason Of Disability*…………………………………………..23

        i.   *Mr. Turner adequately pled that he was denied reasonable accommodations but for his disability*…25

        ii.  *Upholding Mr. Turner's bottom bunk does not constitute a fundamental alteration of the prison's programs, services, or activities*……………………..26

*C.    MDOC's Policy of Requiring Incarcerated Individuals to Access Bunk Beds Without Ladders Discriminates Against Individuals With Disabilities Under The ADA*……………………………………………......28

*D.    MDOC Failed To Provide Mr. Turner With "Safe, Appropriate Housing" In His Cell At MCF*…………………………………………......30

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ability Ctr. of Greater Toledo v. City of Sandusky*,
  385 F.3d 90110 (6th Cir. 2004) ................................................................. 11, 26

*Briggs v. Westcomb*,
  801 F. App'x 956 (6th Cir. 2020) ...................................................................... 11

*Celeste v. E. Meadow Union Free Sch. Dist.*
  373 Fed. App'x 85 (2d Cir. 2010) .................................................................... 21

*Crawford v. Ind. Dep't of Corr.*,
  115 F.3d 481 (7th Cir. 1997) ............................................................................ 18

*Crowder v. Kitagawa*,
  81 F.3d 1480 (9th Cir.1996) ....................................................................... 29, 30

*Dayton v. Veterans Residences Ltd. P'ship*, No. 21-3090,
  2021 U.S. App. LEXIS 34511 (6th Cir. Nov. 19, 2021) ................................. 29

*Denton v. Hernandez*,
  504 U.S. 25 (1992) ............................................................................................. 9

*Diller v. City of Sandusky*,
  398 F.3d 562 (6th Cir. 2005) ............................................................................ 29

*Douglas v. Muzzin*, No. 21-2801,
  2022 U.S. App. LEXIS 21529 (6th Cir. Aug. 3, 2022) ................................... 23

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ......................................................................................... 9, 11

*Estelle v. Gamble*,
  429 U.S. 97 (1976) .............................................................................................. 9

*Grinter v. Knight*,
  532 F.3d 567 (6th Cir. 2008) ............................................................................ 11

*Haines v. Kerner*,
  404 U.S. 519 (1972) ............................................................................................ 9

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ............................................................................ 13

*Hale v. Murfreesboro Housing Authority*, No. 19-01024
  2021 U.S. Dist. LEXIS 184328 (M.D. Tenn. 2021).................................... 15, 16

*Jaros v. Ill. Dep't of Corr.*,
  684 F.3d 667 (7th Cir. 2012) ............................................................................ 19

*Johnson v. City of Saline*,
  151 F.3D 564 (6th Cir. 1998) ........................................................................... 18

*Keller v. Chippewa Cnty.*
  860 Fed. App'x 381 (6th Cir. 2021) ......................................................10, 19, 20

*Knight v. Metro. Gov't of Nashville and Davidson Cnty.*
  136 Fed. App'x 755 (6th Cir. 2005) .................................................. 16
*Love v. Westville Corr. Ctr.*,
  103 F.3d 558 (7th Cir. 1996) ...................................................18, 27, 28
*Lujan v. Pac. Mar. Ass'n*
  165 F.3d 738 (9th Cir. 1999) ........................................................ 26
*Madej v. Maiden*,
  951 F.3d 364 (6th Cir. 2020) ........................................................ 23
*Matthews v. Penn. Dep't of Corr.*
  613 Fed. App'x 163 (3rd Cir. 2015) ............................................... 14
*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ...................................................... 11
*McBride v. Michigan Dep't of Corr.*,
  294 F.Supp.3d 695 (E.D. Mich. 2018) ........................................... 31
*Munoz v. California Dep't of Corr. and Rehab.*,
  842 Fed. App'x 59 (9th Cir. 2021) ................................................ 13
*Oak Ridge Care Ctr. v. Racine Cnty.*,
  896 F. Supp. 867 (E.D. Wis. 1995) ................................................ 10
*Pa. Dep't of Corrs. v. Yeskey*,
  524 U.S. 206 (1998) .................................................................... 18
*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2012) ................................................. 18, 27
*Roell v. Hamilton Cnty.*,
  870 F.3d 471 (6th Cir. 2017) ................................................. 10, 25
*Smith & Lee Associates, Inc. v. City of Taylor*,
  102 F.3d 781 (6th Cir. 1996) ........................................................ 29
*Stansell v. Grafton Correctional Institution*, No. 19-4263,
  2020 U.S. App. LEXIS 25982 *3 (6th Cir. Aug. 14, 2020) ..................14, 20, 21
*Tennessee v. Lane*,
  541 U.S. 509 (2004) ..............................................................20, 21, 25, 26
*United States v. Georgia*,
  546 U.S. 151 (2006) .................................................................... 18
*US Airways, Inc. v. Barnett*,
  535 U.S. 391 (2002) .................................................................... 25
*Wilson v. Gregory*,
  3 F.4th 844 (6th Cir. 2021) .......................................................... 23
*Wright v. N.Y. State Dep't of Corr. & Cnty. Supervision*,
  831 F.3d 64 (2d Cir. 2016) ........................................................... 27
*Ziegler v. IBP Hog Market, Inc.*,
  249 F.3d 509 (6th Cir. 2001) ......................................................... 9

Statutes

28 U.S.C. § 1291 ................................................................................... 1
28 U.S.C. § 1331 ................................................................................... 1
42 U.S.C. § 1997e ............................................................................... 11
42 U.S.C. § 12101 .............................................................................. 10
42 U.S.C. § 12131(2) .......................................................................... 17
42 U.S.C. § 12132 ................................................................... 10, 11, 12
42 U.S.C. §§ 12102(1)(A)–(C) ........................................................... 12
*Inst.,* 18-4009 .................................................................................. 18

Rules

Fed. R. App. P. 4(c) .............................................................................. 1
Federal Rule of Appellate Procedure 32(a)(7)(B)(i) ........................... 34
Federal Rule of Civil Procedure 12(b)(6) ........................................... 11
Rule 32(a)(5) ...................................................................................... 34
Rule 32(a)(6) ...................................................................................... 34
Rule 32(f) ............................................................................................ 34

Regulations

28 C.F.R. 35.108(c)(1) ........................................................................ 13
28 C.F.R. 35.130(b)(7)(i) .............................................................. 10, 19
28 C.F.R. § 35.101(b) ......................................................................... 12
28 C.F.R. § 35.101(d)(1)(v) ................................................................ 12
28 C.F.R. § 35.108(3)(ii) ..................................................................... 12
28 C.F.R. § 35.108(a)(2)(ii) ................................................................ 12
28 C.F.R. § 35.108(d)(1)(v)-(vi) ......................................................... 13
28 C.F.R. § 35.108(d)(vii) ................................................................... 15
28 C.F.R. § 35.108(e)(1) ..................................................................... 15
28 C.F.R. § 35.108(i) ........................................................................... 12
28 C.F.R. § 35.130(b)(3)(i) ................................................................. 28
28 C.F.R. § 35.150(a)(3) ..................................................................... 27
28 C.F.R. § 35.151 .............................................................................. 31
28 C.F.R. § 35.152(3) .................................................................. 10, 30

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Phillip Turner requests oral argument. Argument would aid the Court in evaluating his claim under the Americans with Disabilities Act.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. The district court's Decision and Order on June 9, 2022, dismissed the Plaintiff's complaint for failure to state a claim under section 1997e(c) of the Prisoner's Litigation Reform Act. R. 16, Opinion, PageID ##1–2. Plaintiff-Appellant Philip Turner timely filed a notice of appeal on June 24, 2022. R. 19. See Fed. R. App. P. 4(c). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. Title II of the American with Disabilities Act prohibits discrimination against individuals with disabilities in the provision of public programs, services, and activities.

The first issue is whether the lower court erred in dismissing Mr. Turner's suit pursuant to 1997e(c) of the Prison Litigation Reform Act (PLRA), on the basis that he had not alleged that he had a disability.

II. Further, the ADA requires that prisons and jails provide safe and appropriate housing accessible to people with disabilities.

1

The second issue is whether the Muskegon Correctional Facility (MCF) violated Title II of the ADA when MCF staff refused to grant Mr. Turner a bottom bunk detail, although he is a person with a disability qualified for services provided by MCF, and he was forced to dangerously climb to a top bunk, exacerbating his mobility impairments and pain.

III. Finally, under the ADA, public entities, like prisons, must avoid utilizing methods of administration that discriminate against individuals with disabilities. Facially neutral regulations that lead to a disparate impact on individuals with disabilities are prohibited under the ADA.

The third issue is whether the failure to install ladders on bunk beds in cells such as those utilized by Mr. Turner, and the requirement that prisoners climb to and from the top bunk in order to access a place to sleep, has a disparate impact on individuals with physical disabilities in violation of Title II of the ADA.

## STATEMENT OF THE CASE

### I.    Introduction

Mr. Turner, a fifty-seven-year-old man, arrived at the Muskegon Correctional Facility (MCF) on November 19, 2019. R. 1, Complaint, PageID # 11. At the time of his arrival, he was managing multiple serious medical conditions for which he took various prescribed medications. R. 1, Complaint, PageID # 11. During the quarantine process at the Charles E Egler Reception and Guidance Center (RGC),

Dr. Boomershine examined Mr. Turner and informed him that he qualified for a temporary bottom bunk detail (BBD) due to his "chronic care" status, which reflected his medical history, current medications, and relative ability to ascend to the top bunk. R. 1, Complaint, PageID # 11. Mr. Turner was given a copy of his detail designation and proceeded to his assigned bunk (cell 121-B). R. 1, Complaint, PageID # 11.

On December 4, 2019, MCF staff informed Mr. Turner that his assignment was changing to a top bunk in his current cell (cell 121-A) to accommodate another prisoner with health-related issues who required a bottom bunk. R. 1, Complaint, PageID # 11. Mr. Turner's temporary BBD was still in effect at this time, but when Mr. Turner sought assistance from Health Services to implement his existing BBD, his requests were denied. R. 1, Complaint, PageID # 11. Dr. Asche, one of the medical providers at MCF, gave Mr. Turner no reason as to why his detail had changed, given that his health status had not changed since the medical staff had issued the initial detail. R. 1, Complaint, PageID # 11. Dr. Asche also refused to assign Mr. Turner a new BBD when his temporary assignment expired later in December 2019. R. 1, Complaint, PageID # 11.

With the switch to a top bunk assignment, Mr. Turner struggled to hoist himself up into his new bed. R. 1, Complaint, PageID # 11. In MCF, prisoners who have difficulty pulling their own body weight up onto a top bunk or lowering

themselves down have limited tools at their disposal for assistance because top bunks do not have ladders. R. 1, Complaint, PageID # 10. Instead, prisoners generally use the furniture in their cell to aid their climb, first stepping onto a flimsy plastic chair, then onto the top of a desk, and from there climbing to the top bunk. R. 1, Complaint, PageID # 10. To dismount from the top bunk, the steps are reversed, though shorter prisoners must jump from the bunk to the desk to begin their descent. These items are not stable, nor are they anchored to the wall; they "move and wobble with the potential to topple over." R. 1, Complaint, PageID # 10.  Mr. Turner brought up how dangerous this situation was with both the Warden and Deputy Warden, but both ignored him. R. 1, Complaint, PageID # 11.

On July 10, 2020, Mr. Turner, whose repeated efforts to reinstate his BBD remained unsuccessful, lost his balance when the desk he was standing on while attempting to climb up to his bed tipped over. R. 1, Complaint, PageID # 11. Mr. Turner fell, hitting the desk, then the chair, and finally landing on the floor of his cell. R. 1, Complaint, PageID # 12. Mr. Turner landed on his lower back, causing a severe injury. R. 1, Complaint, PageID # 12. Due to the severity of his injuries, Mr. Turner was taken to the emergency room. R. 1, Complaint, PageID # 12. When Mr. Turner returned to MCF after discharge from the hospital, he was provided crutches to aid him with mobility. R. 1, Complaint, PageID # 12. He also required daily visits to Health Services to check on his wounds and change his dressings. R. 1, Complaint,

PageID # 12. The fall resulted in permanent injury. R. 1, Complaint, PageID # 9. Despite these injuries and the impairment to his mobility on top of his already existing conditions, Mr. Turner was still repeatedly denied a bottom bunk detail after his fall on July 10. R. 1, Complaint, PageID # 12. Both Mr. Turner and a prison staff member named Loomis made multiple requests to reinstate the bottom bunk assignment, but these requests were denied by the correctional facility. R. 1, Complaint, PageID # 12.

Utilizing a top bunk under these conditions proved extremely challenging to Mr. Turner. Climbing up to the top bunk became both more painful and riskier, as the effects of his injury both increased his pain and suffering and decreased his mobility as he continued to use the makeshift desk and chair system to reach his bed. Despite these challenges, Mr. Turner was denied a bottom bunk detail until August 8, 2020, but then was returned once again to a top bunk assignment on August 29, 2020. R. 1, Complaint, PageID # 12. Mr. Turner maintained a top bunk detail for the remainder of his time at MCF. He brought up the dangerousness of his falls several more times with the Wardens and was always ignored. R. 1, Complaint, PageID # 12. The Wardens told him they did not provide ladders to save money. R. 1, Complaint, PageID # 12–13.

## II.    Procedural Background

Mr. Turner filed suit *pro se* against the Michigan Department of Corrections (MDOC), the director of MDOC, the warden and deputy wardens at MCF, and the medical services provider at MCF on September 10, 2021. *See generally* R. 1, Complaint, PageID ## 1–21. He alleged that Defendants had violated Title II of the Americans with Disabilities Act (ADA) and had demonstrated deliberate indifference to his medical needs in violation of his Eighth Amendment rights. R. 1, Complaint, PageID ## 8–10. Mr. Turner also brought claims against Defendants for violating his First Amendment rights, as well as state law claims. R. 1, Complaint, PageID ## 8–10.

On June 9, 2022, the district court dismissed all federal claims against Defendants, pursuant to 1997e(c) of the PLRA, for failure to state a claim under the ADA. Further, it declined to exercise supplemental jurisdiction over Mr. Turner's state law claims. *See generally* R. 16, Opinion, PageID ## 1–15. On the Eighth Amendment claim, the district court relied on the Sixth Circuit opinion in *Millhouse v. Jones* to hold that Mr. Turner did not provide evidence that met the deliberate indifference standard. R. 16, Opinion, PageID ## 8–9. On Mr. Turner's ADA claims against MDOC, the district court held that Mr. Turner did not have a qualifying disability, nor did he provide evidence that he was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was

6

otherwise discriminated against by Defendants, by reason of his disability. R. 16, Opinion, PageID # 12. Mr. Turner timely appealed.

## SUMMARY OF THE ARGUMENT

I.       The district court should not have dismissed Mr. Turner's claims at the pleading stage because he pled sufficient facts to make a plausible claim under the Americans with Disabilities Act (ADA).

II.      The district court erred in applying an incorrect legal standard for a qualified person with a disability under the ADA.

III.     Mr. Turner pled sufficient facts to state a claim that he was disabled and qualified to receive the services of MCF. His bottom bunk medical detail from his past facility and his difficulty walking and climbing while attempting to access his bunk demonstrate he is disabled under the ADA. Additionally, the ADA covers MCF as a public entity, and a safe place to sleep is a "service, program, or activity" within the scope of the ADA according to its plain text, precedent in other circuit courts, and Department of Justice (DOJ) regulations.

IV.      Refusing to honor Mr. Turner's lower bunk medical detail was a denial of meaningful access without a reasonable accommodation. And Mr. Turner was denied an accommodation by reason of his disability because his mobility impairments and pain were exacerbated from being forced to climb to the top bunk.

V.      The failure to install ladders and requiring prisoners to climb to and from the top bunk has a disparate impact on individuals with physical disabilities.

VI.     MDOC's failure to provide accessible elements within Mr. Turner's cell at MCF violates the ADA provision requiring prisons to ensure disabled individuals have access to "safe, appropriate housing" while incarcerated.

## STANDARD OF REVIEW

This Court reviews a motion to dismiss for failure to state a claim under a *de novo* standard of review. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001) ("In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true"). *Pro se* filings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This Court must read Plaintiff's pro se complaint "indulgently" and accept Plaintiff's allegations as true. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that only when Plaintiff's allegations are "clearly irrational or wholly incredible" should such facts be deemed untrue).

**ARGUMENT**

## I.   THE DISTRICT COURT ERRED IN CONCLUDING THAT MR. TURNER HAD NOT PLED FACTS SUFFICIENT TO STATE A CLAIM THAT HE HAD A DISABILITY.

Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and provide broad coverage." 42 U.S.C. § 12101. Turner brought an ADA claim alleging that MDOC discriminated against him by failing to make reasonable modifications to their policies and practices and provide him with a bottom bunk designation. *See Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017); *see also* 42 U.S.C. § 12132. In addition, Mr. Turner argued that MDOC's policy of not providing ladders or stable methods of accessing the top bunk adversely impacted individuals with physical and mobility related disabilities, like himself. *See* 28 C.F.R. 35.130(b)(7)(i); *see also Oak Ridge Care Ctr. v. Racine Cnty.*, 896 F. Supp. 867, 874 (E.D. Wis. 1995). Finally, Mr. Turner alleged that MDOC had failed to provide "safe and appropriate" housing for people with disabilities. 28 C.F.R. § 35.152(3).

The prima facie elements to bring a claim under the ADA are: "(1) he is disabled; (2) he was 'qualified' to take part in the 'services, programs, or activities' of the public entity;" (3) he was 'excluded from participation in' or 'denied the benefits of' such 'services, programs, or activities;' and (4) this exclusion or denial occurred 'by reason of'" his disability. *Keller v. Chippewa Cnty.*, 860 Fed. App'x

11

381, 385–86 (6th Cir. 2021) (quoting 42 U.S.C. § 12132); *see also Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909–10 (6th Cir. 2004). To succeed under a disparate impact claim, a plaintiff can show that even "facially neutral policies may be in fact discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services" and thus such policies are more harshly applied to the "handicapped." *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004).

Mr. Turner filed the ADA claim *pro se* while incarcerated in MCF. R. 1, Complaint, PageID # 1. Thus, Mr. Turner is subject to the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e; *see also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (requiring "district courts to screen and dismiss complaints that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief"). Under the PLRA, the standard for dismissal of a claim mirrors the standard under Federal Rule of Civil Procedure 12(b)(6). *Briggs v. Westcomb*, 801 F. App'x 956, 958 (6th Cir. 2020). The standard is even more liberally construed to favor the *pro se* complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A. *Mr. Turner Sufficiently Pled The Prima Facie Elements Necessary to Succeed In An ADA Claim.*

1. Under The Correct ADA Standard, Mr. Turner Is A "Qualified Person With A Disability."

12

The district court mistakenly dismissed Mr. Turner's claim on the basis that he failed to allege that he had a disability. The ADA protects any "qualified individual with a disability" from discrimination, including denials of reasonable accommodations. 42 U.S.C. §12132. Under the correct legal standard, any individual who has a "physical or mental impairment that substantially limits one or more major life activities," a "record of such impairment," or is "regarded as having such impairment" meets the definition of disability under the ADA. 42 U.S.C. §§ 12102(1)(A)–(C). After the 2008 ADA amendments, this legal definition is "not meant to be a demanding standard" but rather is intended to be "construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(i); 28 C.F.R. § 35.101(b). The district court failed to apply this standard.

       i.   *Mr. Turner has an impairment that substantially limits his ability to walk and climb.*

Mr. Turner alleged that he had an "actual" disability because his impairment substantially limits his ability to walk and climb, two major life activities. 28 C.F.R. § 35.108(a)(2)(ii). An impairment is considered "substantially limiting" if it affects a person's ability to perform it compared to "most people in the general population," taking into account such factors as "the difficulty, effort or time required to perform a major life activity" and "pain experienced when performing a major life activity." 28 C.F.R. § 35.101(d)(1)(v); 28 C.F.R. § 35.108(3)(ii). This standard is intended to be lower than the "substantially limits" standard applied before the 2008 ADA

13

amendments and does not require that the impairment completely or even significantly limit the individual's major life activities. 28 C.F.R. § 35.108(d)(1)(v)-(vi).

Major life activities are "activities that are of central importance to daily life," and the ADA's list of major life activities provided is non-exhaustive, suggesting that some activities of such "central importance to daily life" might also be considered major life activities. *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011); 28 C.F.R. 35.108(c)(1). Mr. Turner's impairment substantially limits his ability to walk, a major life activity explicitly included in the ADA's non-exhaustive list of "major life activities." 28 C.F.R. 35.108(c)(1). Mr. Turner's ability to climb was also substantially limited by his impairment. Climbing should also be considered one of Mr. Turner's major life activities because it was centrally important to his daily life at MCF—he had no other way to reach and descend from his sleeping place except by climbing up and down from his bunk. *Hale*, 642 F.3d at 500. Other circuits have held that climbing may be considered a major life activity under the ADA. *See, e.g., Munoz v. California Dep't of Corr. and Rehab.*, 842 Fed. App'x 59, 61 (9th Cir. 2021).

In *Stansell v. Grafton Correctional Institution*, this Court held that an incarcerated individual sufficiently alleged that he was disabled when he stated that he had pain and difficulty when bending over because of a past abdominal procedure,

14

and that having to use shorter tables in the prison's visitation room was thus made difficult and caused him extreme pain. *Stansell v. Grafton Correctional Inst.*, 19-4263 2020 U.S. App. LEXIS 25982 *3 (6th Cir. Aug. 14, 2020). In a factually similar Third Circuit case, the court held that a plaintiff sufficiently alleged he had a disability under the post-2008 ADA standard by stating that his Achilles tendonitis, as well as the cast and crutches he was required to use for six weeks substantially limited his ability to stand, walk, and use the stairs. *Matthews v. Penn. Dep't of Corr.*, 613 Fed. App'x 163, 168-69 (3rd Cir. 2015). Mr. Turner has provided similar evidence that he met the low standard for disability under the ADA.

The district court incorrectly concluded that Mr. Turner had not pled sufficient facts to demonstrate that he had an actual disability. First, Mr. Turner alleged that he arrived at MCF with a medical detail to a bottom bunk and that he took medications for his "serious medical problems" which affected his ability to use a top bunk. R. 1, Complaint, PageID # 11. In so doing, he provided evidence that he was unable to perform the actions needed to reach a top bunk without difficulty or pain. R. 1, Complaint, PageID # 11. Additionally, Mr. Turner alleged that as a result of his substantial difficulty in climbing, he fell to the ground while he was descending from his top bunk, both seriously injuring himself and aggravating his inability to walk and climb. R. 1, Complaint, PageID # 11–12. After the aggravation of his disability from his fall, Mr. Turner was sent to the emergency room due to his

15

"extensive and severe" injuries. R. 1, Complaint, PageID # 12. His injuries were serious enough that the prison provided him crutches and he had to have his dressings for the wound changed daily. R. 1, Complaint, PageID # 12. It is obvious that someone who at this point required the use of crutches to walk would have substantial difficulty climbing on a "wobbly plastic chair and a desk that moves" to reach a top bunk as well. R. 1, Complaint, PageID # 11. If the district court had properly applied the low standard for disability under the ADA, like the courts in *Stansell* and *Matthews*, the court would have held that these facts constituted a prima facie claim of disability.

> ii. *Mr. Turner adequately pled that he had a disability based on a record of his impairment.*

Mr. Turner also had a record of impairment. MDOC's records included assignment of a medical detail to a bottom bunk from a doctor who medically evaluated him in a prior facility. R. 1, Complaint, PageID # 11. An individual is considered to have a record of their disability when the individual has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 28 C.F.R. § 35.108(e)(1). An individual's substantially limiting impairment need not have lasted longer than six months or be ongoing in order to be considered disabled by having a record of a substantially limiting impairment. 28 C.F.R. § 35.108(d)(vii); *Hale v. Murfreesboro Housing Authority*, No. 3:19-CV-01024, 2021 U.S. Dist. LEXIS 184328 at *12

16

(M.D. Tenn. 2021) (noting that a "record of disability" can be met if a plaintiff demonstrates they had a disability in the past even if they were no longer disabled at the moment the alleged discrimination occurred.). In this case, Mr. Turner has a record of his impairment which substantially limits his abilities to walk and climb.

Applying the broad definition of disability adopted by Congress and codified in the 2008 amendments to the ADA, courts in this circuit have held that plaintiffs stated a claim that they had a record of disability even if they had recovered from their disability. In *Hale v. Murfreesboro Housing Authority*, the district court held that a plaintiff who alleged having a stroke and not being able to "walk, care for herself, or essentially do anything [f]or at least a month following her stroke" had stated enough undisputed facts showing she may have had a "record of" her impairment in order to proceed to trial. *Hale v. Murfreesboro Housing Authority*, 2021 U.S. Dist. LEXIS 184328 at *12; s*ee also Knight v. Metro. Gov't of Nashville and Davidson Cnty.*, 136 Fed. App'x 755, 760-61 (6th Cir. 2005) (holding that a jury determination that a former police officer had a record of his impairment was reasonable when the plaintiff had been on disability status with the police department for twenty years and showed a limited work history due to his impairment).

Mr. Turner clearly had a record of his impairment and MCF and MDOC had access to it. Mr. Turner alleged his medical detail to a bottom bunk was provided to him upon entry to the facility. R. 1, Complaint, PageID # 11. Additionally, upon

entry to MCF, his medical file indicated that he had "chronic care" status, which also constitutes a record of his impairment. R. 1, Complaint, PageID # 11. Upon release from the emergency room, Mr. Turner was given crutches in order to ambulate. R. 1, Complaint, PageID # 12. Mr. Turner would only have been able to use these crutches in a maximum-security facility like MCF if prison staff had a record of his impairment demonstrating their necessity. Applying the broad standard for establishing a "record of" disability, the lower court should have held that Mr. Turner stated, at minimum, a plausible claim that he was disabled because he had a record of his impairment.

> iii.  *Mr. Turner was qualified to receive the services provided by Muskegon Correctional Facility, a public entity covered by the ADA.*

The district court held that Mr. Turner did not allege that he was denied any service, program, or activity by the correctional facility. This conclusion is incorrect. Mr. Turner clearly alleged that he was denied a safe place to sleep while at MCF, a "service" provided by MDOC. Additionally, Mr. Turner was a "qualified" individual with a disability because he met "the essential eligibility requirements" to receive MCF's services: he was incarcerated at the prison and the prison is a public entity. 42 U.S.C. § 12131(2).

State prisons operated by MDOC are public entities under the ADA. *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also United States v. Georgia*,

546 U.S. 151, 157 (2006). Furthermore, a safe place to sleep is a prison service covered by the ADA because "services" and "programs" of a prison include "virtually anything [the] public entity does" that at least "theoretically benefit[s] prisoners." *Yeskey*, 524 U.S. at 210; *Johnson v. City of Saline*, 151 F.3D 564, 569 (6th Cir. 1998) (holding, also, "that the word "activities" "on its face, suggests great breadth and offers little basis to exclude any actions of a public entity."). Courts have held that prisons provide a wide range of services. For instance, the Sixth Circuit has held that access to a toilet constitutes a "service" provided by the correctional facility. *Stansell v Grafton Correctional Inst.,* 18-4009, 2019 U.S. App. LEXIS 24597, at *2 (6th Cir. 2019); *see also Love v. Westville Corr. Ctr.*, 103 F.3d 558, 558–59 (7th Cir. 1996) (holding that visitation facilities are services under the ADA as well as the law library and dining hall; *Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997) (noting that educational programs in prison are programs under the ADA). Similarly, courts have held that the provision of a safe place to sleep falls within the scope of "service." *See, e.g.*, *Pierce v. County of Orange*, 526 F.3d 1190, 1224 n.44 (9th Cir. 2012) (affirming that the provision of "appropriate and adequate bedding" was a service of the jail).

Thus, the district court erred in holding that Mr. Turner had not been denied access to any of the services provided by MDOC.

B.    *Mr. Turner Demonstrated That He Was Denied Reasonable Accommodations By MDOC.*

19

1. Mr. Turner Pled Sufficient Facts Alleging That MCF Failed To Modify Its Policy And Provide "Meaningful Access" To Its Services, Programs, And Activities.

Public entities, such as MCF, are subject to the ADA and "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i); *see also Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012) ("Refusing to make reasonable accommodations is tantamount to denying access"). A plaintiff is excluded from the services of a public entity when they are denied "meaningful access" to the programs. *Keller*, 860 Fed. App'x at 386.

Mr. Turner repeatedly requested the accommodation of either a lower bunk designation or ladders. R. 1, Complaint, PageID ## 11–14. These repeated requests were denied—the correctional facility refused to accommodate Mr. Turner by providing a BBD. *See id*; Mr. Turner's complaint gives extensive detail as to the difficulties faced when ascending to the top bunk and shows specific harm after falling from the top bunk. R. 1, Complaint, PageID ## 10–14. Importantly, unlike the cases where plaintiffs lost on summary judgment, the lower court dismissed Mr. Turner's complaint prior to even serving the Defendants. *See generally* R. 16, Opinion, PageID ## 1–15.

20

The lower court erroneously held that Mr. Turner's ability to sometimes access his bunk meant he could not satisfy this element of the ADA. *See* R. 16, Opinion, PageID # 13 (incorrectly holding that the fact that "Plaintiff successfully accessed his top bunk on many occasions" demonstrated meaningful access). However, simple use of services does not satisfy that there was meaningful access. *Keller*, 860 F. App'x at 387. If access to services is only possible through "excessive and painful effort," there is sufficient evidence to make a claim for failure to make reasonable accommodations. *Id.* For instance, in *Tennessee v. Lane*, a plaintiff who used a wheelchair brought an ADA claim because the court did not have a ramp to enter the building. *Tennessee v. Lane,* 541 U.S. 509 (2004). The plaintiff was able to eventually get into the courthouse, but only after he was forced to crawl up two flights of stairs, refusing to be carried. *Id.* at 514. The U.S. Supreme Court nonetheless held that his ADA claim was valid. *See id.* at 533–34.

Similarly, in *Stansell v. Grafton Correctional Institution*, the plaintiff successfully brought a claim that switching to shorter tables in the visitation room violated the ADA. *Stansell v. Grafton Correctional Institution,* 19-4263, 2020 U.S. App. LEXIS 25982, at *3 (6th Cir. Aug. 14, 2020). While the plaintiff could technically still use the tables, the shorter tables caused him "severe pain and discomfort" given his difficulties in bending over. *Id.* (holding that the defendant "forced him to either forgo visitation or participate and experience unnecessary pain

and suffering"). In both *Lane* and *Stansell*, courts determined that even though plaintiffs still had the ability to access services, this was not meaningful access. *Lane*, 541 U.S. at 512; *Stansell*, 2020 U.S. App. LEXIS 25982 at *3; *see also Celeste v. E. Meadow Union Free Sch. Dist.,* 373 Fed. App'x 85, 88 (2d Cir. 2010) (holding that a mobility-impaired student did not have meaningful access to facilities when "forced to take a ten-minute detour").

While Mr. Turner was able to access the top bunk, the record repeatedly shows that it was dangerous and painful. Prisoners of MCF were forced to "ascend onto the top bunk [] in an unsafe and dangerous manner" as there were no ladders. R. 1, Complaint, PageID # 10. To reach his sleeping quarters, Mr. Turner had to climb upon a wobbly plastic chair and an unsecured table that could easily topple over. R. 1, Complaint, PageID # 10. Both Mr. Turner and the plaintiffs in *Lane* and *Stansell* were only able to access the services through extreme efforts and were therefore denied meaningful access. R. 1, Complaint, PageID # 10. The lower court conflated disparate treatment with reasonable accommodation by comparing Mr. Turner's access to be the same as other inmates. R. 16, Opinion, PageID # 13. Such misinterpretation ignores that without an accommodation from MCF, Mr. Turner could not meaningfully access his place to sleep under the equality mandate of the ADA.

Mr. Turner's fall when he attempted to climb to the top bunk was the most powerful demonstration of the fact that he was denied meaningful access. R. 1, Complaint, PageID ## 11–12. The fall caused Mr. Turner to split his buttocks, causing him to bleed excessively, affecting his mobility, and requiring him to use crutches and have his bandages changed daily. R. 1, Complaint, PageID # 12. Even on crutches, Mr. Turner was expected to make the same dangerous ascent to and descent from his bunk. R. 1, Complaint, PageID # 12. Therefore, like in *Stansell*, Defendants forced Mr. Turner to choose to suffer through unnecessary pain or forgo services. R. 1, Complaint, PageID ## 11–12. However, unlike *Stansell*, the service was so critical that Turner could not realistically forgo access to his sleeping quarters, making an accommodation even more vital. R. 1, Complaint, PageID ## 11–12.

Mr. Turner alleged that Defendants themselves acknowledged the dangers associated with climbing on chairs and desks, demonstrating the danger they were putting him in. R. 1, Complaint, PageID # 14. MCF policy prohibits prisoners from misusing state property in the dayroom and TV room. R. 1, Complaint, PageID # 14. This policy specifically asserts that it is dangerous to stand on the chairs, yet the prison forced Mr. Turner to engage in this dangerous activity to access his bed, even after incurring serious injury. R. 1, Complaint, PageID ## 11–12, 14. If a ten-minute detour in *Celeste* or pain when sitting down in *Stansell* prevent meaningful access,

23

forcing Mr. Turner to climb on wobbly chairs and desks while on crutches should, at the minimum, state a claim as to his access to MCF's services. R. 1, Complaint, PageID ## 10–12.

> ### 2. Mr. Turner Adequately Pled That He Was Discriminated Against by Reason Of Disability.

The court erred in concluding that Mr. Turner had not alleged facts sufficient to demonstrate that he had been discriminated against by reason of disability. The requirement to demonstrate that an individual was discriminated against "by reason of disability" serves as a causation requirement, which can be satisfied by the showing "that the proposed modification is needed to avoid the denial of services or benefits." *Madej v. Maiden*, 951 F.3d 364, 373 (6th Cir. 2020). It is sufficient for the plaintiff to show that harm could have been avoided if the government had provided some reasonable accommodation. *See Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, at \*19 (6th Cir. Aug. 3, 2022) (citing *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021)).

In *Douglas*, the defendant forced the plaintiff-prisoner to wear standard prison shoes instead of his orthopedics. *Id.* at \*20. Due to the excessive "pain that came from wearing the prison's provided shoes instead of his orthopedic shoes," he could not utilize prison services. *Id.* He was forced to shorten any visits and avoid "chow hall" because the pain was so intolerable. *Id.* Prior to the 45-day removal of his orthopedics, the plaintiff had been able to engage in these services. *Id.* (holding that

evidence of activities prior to denial of accommodation is persuasive to show causation).

Similar to *Douglas*, Mr. Turner would not have been subject to pain when accessing the top bunk if he had not suffered from his disability. R. 1, Complaint, PageID # 11. Mr. Turner was diagnosed with a chronic back condition and assigned a bottom bunk detail prior to his arrival at MCF. R. 1, Complaint, PageID # 11. Other medical personnel, both inside and outside of the prison system, found Mr. Turner to have a chronic condition that prevented him from climbing to the top bunk. R. 1, Complaint, PageID # 11. Further, a counselor from MCF requested that Mr. Turner receive a bottom bunk detail given his condition. R. 1, Complaint, PageID # 12.  It was MCF's failure to enforce Mr. Turner's bottom bunk assignment that forced Mr. Turner to climb to the top bunk on wobbly furniture. R. 1, Complaint, PageID # 11. Further, Mr. Turner would not have fallen if he had not been directed to climb to reach his bunk combined with his limitation in climbing. R. 1, Complaint, PageID # 11–12. Mr. Turner had previously maintained a permanent bottom bunk detail, like the orthopedics given in *Douglas*, and did not face this pain and hardship when his disability was reasonably accommodated. R. 1, Complaint, PageID # 11. Mr. Turner adequately pled that he was able to engage in the services of the public entity—namely accessing a safe place to sleep—when he was granted accommodations. The This suffices to conclude that Mr. Turner had pled sufficient facts to prove causation.

i.   *Mr. Turner adequately pled that he was denied reasonable accommodations*

The ADA recognizes that discrimination can take different forms. While it prohibits disparate treatment on the basis of disability, analogously to racial or gender discrimination, it separately requires that public entities provide reasonable modifications to their policies in order to accommodate individuals with disabilities. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). These causes of action are distinct. When considering a reasonable accommodation claim, the relevant question is about the reasonableness of the accommodation. The enquiry is separate from the question central to a disparate treatment claim, of whether other individuals were treated in the same way as the plaintiff. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 398 (2002) (noting that courts incorrectly focus on "uniformity of 'effect' rather than 'application'").

For instance, in *Lane*, the plaintiffs were given the same access into the courthouse as anyone else—via stairs. *Lane*, 541 U.S. at 514. However, given plaintiffs' mobility restrictions, they were unable to enter the court without excessive hardship. *Id.* The Supreme Court therefore held that the courthouse did not provide a reasonable accommodation that could have prevented the plaintiffs' hardships. *Id*; *see also Ability Ctr. of Greater Toledo*, 385 F.3d at 909 ("defendants' failure to provide plaintiffs certain architectural accommodations – is actionable under Title II even when not intentional") (internal quotations omitted).

26

The lower court incorrectly conflated Mr. Turner's reasonable accommodations and discriminatory treatment claims. It stated that Mr. Turner has not "alleged any discrimination he faced." R. 16, Opinion, PageID # 13. However, the law is clear that it is not necessary to distinguish Mr. Turner's access "relative to the ability of any other prisoner." R. 16, Opinion, PageID # 13. While many incarcerated people at MCF were required to climb to the top bunk, Mr. Turner was entitled to a reasonable accommodation as person with a disability. R. 1, Complaint, PageID # 10. While top bunk assignments might have been a regular "application" in MCF, given Mr. Turners disability, it had a different—painful— "effect."

> ii. *Upholding Mr. Turner's bottom bunk does not constitute a fundamental alteration of the prison's programs, services, or activities.*

Honoring Mr. Turner's permanent bottom bunk assignment would not be an unreasonable accommodation for the Defendants. First, reasonableness of an accommodation is for the factfinder to determine. *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999). The court cannot make this determination as a matter of law unless the "undisputed record reveals that the plaintiff was accorded a plainly reasonable accommodation." W*right v. N.Y. State Dep't of Corr. & Cnty. Supervision*, 831 F.3d 64, 73 (2d Cir. 2016). Reasonable accommodations are those that do not result in a "fundamental alteration in the nature of a service, program, or activity." 28 C.F.R. § 35.150(a)(3).

27

Accommodations in prisons are generally considered reasonable so long as they do not result in additional costs or safety concerns. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1220 (9th Cir. 2008); *see also Love v. Westville Corr. Ctr.*, 103 F.3d 558 (7th Cir. 1996). In *Pierce*, "vague assertion[s]" of expenses required to make a bathroom accessible to "dexterity impaired detainees" were not compelling enough to warrant failure to comply with the ADA. *Pierce*, 526 F.3d at 1220. The defendant in *Love* also failed to demonstrate that there was a security or safety concern if the plaintiff was to be released from his prolonged stay in the prison infirmary. *Love*, 103 F.3d at 561.

There are no allegations demonstrating that Mr. Turner's bottom bunk assignment would be an unreasonable accommodation, especially given that the case was dismissed prior to discovery or any analysis of the facts. *See* R. 16, Opinion PageID # 1. As demonstrated by Mr. Turner's prior bottom bunk detail, and the detail of his own cellmate, such accommodation would in no way fundamentally alter the nature of the prison. R. 1, Complaint, PageID # 11. There is also no additional cost associated with granting Mr. Turner his bottom bunk detail. Finally, as found in *Love*, a bottom bunk detail would not have provided Mr. Turner with any kind of weapon or security risks to the prison.

Since honoring Mr. Turner's bottom bunk assignment would not fundamentally change MCF's service, add additional costs, or pose a safety concern, this accommodation was reasonable.

*C.  MDOC's Policy Of Requiring Incarcerated Individuals to Access Bunk Beds Without Ladders Discriminates Against Individuals With Disabilities Under the ADA.*

Public entities may not "utilize criteria or methods of administration" that have "the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i). MDOC's blanket policy of not providing ladders for top bunk access at MCF adversely impacts individuals with disabilities in violation of this regulation. This method of administration has the effect of subjecting individuals with disabilities to discrimination on the basis of disability as the blanket policy effectively prevents people with physical disabilities from accessing a safe place to sleep.

Congress "intended the ADA to cover at least some so-called disparate impact cases of discrimination" as barriers to full participation in the services under Title II of the ADA are often facially neutral "but may work to effectuate discrimination against disabled persons." *Crowder v. Kitagawa,* 81 F.3d 1480, 1483 (9th Cir. 1996) (holding that Hawaii discriminated against a class of visually impaired plaintiffs by refusing to make modifications to a facially neutral policy requiring all animals entering the state, including guide dogs, to be quarantined for 120 days.) The

29

*Crowder* Court held that the State violated the ADA because the policy in question "burden[ed] visually-impaired persons in a manner different and greater than it burden[ed] others." *Id.* at 1484

This Court similarly held that there does not have to be intentional discrimination for a finding that acts or omissions disparately impact persons with disabilities. *Diller v. City of Sandusky,* 398 F.3d 562, 568 (6th Cir. 2005) (showing that all disabled persons were affected by "the failure of Sandusky to install handicapped-accessible sidewalks"). Further this Court emphasized in *Dayton v. Veterans Residences Ltd. Partnership* that to determine whether there is a disparate impact, the court must ask whether both disabled and non-disabled individuals had "equal opportunity to 'enjoy [the services of the public entity].'" No. 21-3090, 2021 U.S. App. LEXIS 34511, at *20–21 (6th Cir. Nov. 19, 2021) (quoting *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 794 (6th Cir. 1996)). There it was found that the housing voucher system, while applying equally to everyone, "deprived its disabled tenants of the opportunity to live in the Dayton community equal to that of nondisabled persons in the community." *Id.*

Mr. Turner repeatedly and sufficiently pled that all prisoners were forced to dangerously ascend to and from their bunks without a ladder. R. 1, Complaint, PageID # 10. His complaint described in detail how without ladders, prisoners were "forced to step onto a wobbly plastic chair, then up onto an old un-secure desk that

moves when you step on it, proceeding with climbing onto the top bunk." R. 1, Complaint, PageID # 10. Even though this dangerous climb is facially neutral by applying to all prisoners, like in *Crowder* and *Dillery*, it causes specific discrimination to individuals with a physical disability. R. 1, Complaint, PageID # 10.

### D. MDOC Failed To Provide Mr. Turner With "Safe, Appropriate Housing" in His Cell at MCF.

MDOC violated the ADA regulations specifically requiring jails, detention, and correctional facilities to provide a cell with accessible elements that would make the cell safe and appropriate for Mr. Turner's disability. ADA regulations require that "public entities shall implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." 28 C.F.R. § 35.152(3). The 2010 ADA Accessibility Standards are the current minimum requirements that prisons covered by Title II of the ADA must meet when they make alterations to their facilities so that they are accessible to individuals with disabilities. 28 C.F.R. § 35.151.

In *McBride v. Michigan Department of Corrections*, deaf plaintiffs alleged their cells were unsafe because they did not have "accessible elements" that would alert them to the need to evacuate in the event of an emergency. 294 F.Supp.3d 695,

718 (E.D. Mich. 2018). The plaintiffs alleged that they could not hear sound alarms or announcements nor see visual alarms, and that pagers provided by the facility to the plaintiffs in lieu of alarms accessible to plaintiffs were insufficient to remedy the unsafe conditions of their cells. *Id.* The district court held that summary judgment on these facts was not appropriate for either party, holding that plaintiffs' facts not only stated a claim but were substantial enough to require a trial. *Id.* at 719.

Mr. Turner has provided similar facts to state a claim that he was housed in a cell that did not have the accessible elements necessary to provide him with "safe and appropriate housing" in violation of this section of the ADA. He specifically alleged conditions making his cell unsafe and inappropriate for his disability, including that he was forced to "step onto a wobbly plastic chair, then up onto an old, unsecure desk that moves when you step on it" in order to ascend to his top bunk, which ultimately led to his fall and serious injury. R. 1, Complaint, PageID # 10–11. He alleged two accessible elements that should have been in place: one, a bottom bunk to accommodate his disability, and two, that all cells with bunk beds should have ladders to make the climb up and down from the top bunk safe. R. 1, Complaint, PageID # 10–1 1. Mr. Turner showed he continued to have to use a top bunk even while he was on crutches recovering from an aggravation to his disability, making the cell more dangerous for a physically disabled individual. R. 1, Complaint, PageID # 12.

## CONCLUSION

This Court should reverse the district court's dismissal for failure to state a claim under the Prison Litigation Reform Act and remand to the district court for service and further proceedings.

Date: November 10, 2022

/s/ Samuel Weiss
Samuel Weiss

Rights Behind Bars
416 Florida Avenue, #26152
Washington, DC 20001
Attorney for Appellant Phillip Turner

## CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i)'s type-volume limitation because it contains 7,439 words, excluding parts of the brief exempted by Rule 32(f).

The brief complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionally spaced typeface using Times New Roman, 14-point, in Microsoft Word.

 /s/ *Samuel Weiss*
     Samuel Weiss
     Attorney for Phillip Turner
     Dated: November 10, 2022

## CERTIFICATE OF SERVICE

I certify that on November 10, 2022, I filed this brief with the Clerk of the Court electronically via the CM/ECF system. All participants in this case are registered CM/ECF users and will be served electronically via the system.

November 10, 2022                                    /s/ *Samuel Weiss*
                                                       Samuel Weiss

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Under Sixth Circuit Rules 28(b) and 30(g), Appellant designates the following filings in the record as entries that are relevant to this appeal:

| Description of Entry | Docket No. | PageID |
|---|---|---|
| Complaint | R. 1 | 1–21 |
| Opinion | R. 16 | 64–78 |
| Judgment that the action is dismissed as frivolous, malicious, or for failure to state a claim | R. 18 | 80 |
| Notice of Appeal | R. 19 | 81–82 |